1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney

2

3  BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division

4  DANIEL R. KALEBA (CABN 223789)
   Assistant United States Attorney

5
     150 Almaden Boulevard, Suite 900
6    San Jose, California 95113
     Telephone: (408) 535-5061
7    Facsimile: (408) 535-5081
     E-Mail: daniel.kaleba@usdoj.gov

8
   Attorneys for the Complainant United States of America
9

FILED

2008 JUN 11  A 11: 44

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13                                    )    Misc. No. CR 08-90257 RMW
                                      )
14  IN THE MATTER OF THE              )    UNITED STATES' MEMORANDUM RE:
    THE EXTRADITION OF                )    EXTRADITION PROCEEDINGS
15  JESUS FELIX SALAZAR               )
                                      )
16  _____ )

17                      **INTRODUCTION**

18        This case involves the request by the Government of Mexico to the United States

19  for the provisional arrest of Jesus Felix Salazar with a view towards extradition.  The

20  charge for which Mexico seeks Felix Salazar's provisional arrest is qualified homicide.

21        Felix Salazar was arrested on June 11, 2008, pursuant to a complaint and

22  provisional arrest warrant issued in the Northern District of California by U.S. Magistrate

23  Judge Richard Seeborg on June 5, 2008, in accordance with 18 U.S.C. § 3184, at the

24  request of the Government of Mexico pursuant to the Extradition Treaty between the

25  United States and the Republic of Mexico.  In this matter, the United States acts on behalf

26  of the Mexican government.

27

28  USA's MEMORANDUM RE: EXTRADITION
    JESUS FELIX SALAZAR
    Misc. No. CR 08-90257 RMW

1    Mexico is required under the Treaty to submit a formal request for surrender,

2    supported by appropriate documents, to the Department of State. Mexico has not yet

3    complied with this requirement. Pursuant to the Treaty, Mexico has 60 days from the

4    date of the provisional arrest to provide the United States with the formal request for

5    extradition and its supporting documents. See T.I.A.S. No. 9656, 31 U.S.T. 5059, art. 11

6    (1980 WL 309106).

7    Once Mexico submits these documents, by statute, this Court must thereafter hold

8    a hearing to consider the evidence of criminality presented by Mexico and to determine

9    whether it is "sufficient to sustain the charge under the provisions of the proper treaty or

10   convention." 18 U.S.C. § 3184. Felix Salazar may waive in writing the extradition

11   hearing and be transferred to Mexico as soon as escorts can be arranged. If the court

12   finds the fugitive extraditable, it certifies that conclusion to the Secretary of State, who

13   decides whether to surrender him. Because the law regulating extradition differs from

14   ordinary criminal or civil proceedings so much as to be classed sui generis, the

15   government offers this memorandum as a guide to the nature of the hearing and a

16   description of its distinctive features.

17                                      **DISCUSSION**

18   **I.    NATURE OF THE HEARING.**

19        A.    *Purpose of Hearing.*

20        The purpose of the hearing required by 18 U.S.C. § 3184 is to determine whether a

21   person arrested pursuant to a complaint in the United States on behalf of a foreign

22   government is subject to surrender to the requesting country under the terms of the

23   pertinent treaty and relevant law. If the court decides that the elements necessary for

24   extradition are present, it incorporates these determinations in factual findings and

25   conclusions of law styled as a "certification of extraditability," which is forwarded to the

26

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW

1   Department of State for disposition by the Secretary of State.  The decision to surrender

2   the fugitive rests with the Secretary.

3           B.      *Elements Necessary for Extradition.*

4           There are several formulations of the requirements for extradition.  An early

5   Supreme Court opinion held that a determination of extraditability was proper if:  (1) the

6   judicial officer was authorized to conduct extradition proceedings; (2) the court had

7   jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the

8   crimes for which surrender was requested were covered by the treaties; and (5) there was

9   competent legal evidence for the decision.  Ornelas v. Ruiz, 161 U.S. 502 (1896); see also

10  Bingham v. Bradley, 241 U.S. 511 (1916); McNamara v. Henkel, 226 U.S. 520 (1913);

11  Zanazanian v. United States, 729 F.2d 624 (9th Cir. 1980).  Another formula calls for a

12  determination that: (1) there are criminal charges pending in the requesting state; (2) the

13  charges are included under the treaty as extraditable offenses; and (3) there is probable

14  cause to believe that a crime was committed and that the person before the court

15  committed it.  United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985).  This

16  memorandum briefly discusses these elements, drawing on both Ornelas and Barr.

17          1.      Authority of the judicial officer.

18          The statute, 18 U.S.C. § 3184, authorizes a broad class of judicial officers to hear

19  extradition cases.  The authority of the judicial officer to hold an extradition hearing was

20  a more contentious issue in the law's early days when cases were brought by private

21  counsel before all manner of courts.  Federal judges are clearly authorized by the statute

22  to hear and decide extradition cases; the statute provides that magistrate judges may do so

23  if permitted by rule of their court.  See Ward v. Rutherford, 921 F.2d 286 (D.C. Cir.

24  1990) (Ginsburg, J.) (rejecting constitutional challenge to magistrate's authority); see also

25  Crim. L.R. 7-1(b)(13).

26  //

27

28  USA's MEMORANDUM RE: EXTRADITION
    JESUS FELIX SALAZAR
    Misc. No. CR 08-90257 RMW

1    2.    Jurisdiction over the fugitive.

2        Although the Supreme Court included personal jurisdiction as an essential element

3    for reasons of analytic completeness, the question of jurisdiction has not been a decisive

4    issue in an extradition case in modern times.  If the fugitive is before the court, the court

5    has personal jurisdiction.  See In re Pazienza, 619 F. Supp. 611 (S.D.N.Y. 1985).

6    3.    Treaty in full force and effect.

7        The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances

8    in which a treaty is in force between the requesting state and the requested state, and

9    several cases have so held.  See, e.g., Argento v. Horn, 241 F.2d 258 (6th Cir. 1957).

10   Here, the Extradition Treaty between the United States and Mexico is in full force and

11   effect.  See T.I.A.S. No. 9656, 31 U.S.T. 5059 (1980 WL 309106).

12   4.    Charges or conviction in the requesting state.

13       The documents submitted by the requesting state will establish that the fugitive has

14   been charged or convicted.  Because criminal procedures under other systems differ from

15   ours, the charging document will not necessarily be an indictment or a criminal

16   information.  In many countries, the charges are reflected in the arrest warrant.  The court

17   should not be drawn into a technical dispute over the significance of the term "charging

18   document."  Matter of Assarsson, 687 F.2d 1157 (7th Cir. 1982).

19   5.    Crime covered by the treaty.

20       Extradition treaties create an obligation to surrender fugitives under the

21   circumstances defined in the treaty.  The treaty may specify that extradition can be had

22   for particular offenses that are listed in the treaty, for any serious offense that is

23   punishable in both the requesting and requested state, for some combination of those two

24   categories, or for an even broader range of offenses.  The court must determine whether

25   the crime for which extradition is requested is among the offenses specified in the treaty

26   as giving rise to an obligation to extradite.

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW

1    Dual criminality is not required per se for extradition; it need be found only if the

2    treaty so requires.  Factor v. Laubenheimer, 290 U.S. 276 (1933); In re Assarsson, 635

3    F.2d 1237 (7th Cir. 1980).  A requesting country is not obliged to produce evidence on all

4    elements of a criminal offense nor to establish that its crimes are identical to ours.  Kelly

5    v. Griffin, 241 U.S. 6, 15 (1916).  If a dual criminality analysis is required, the court

6    should examine the facts and decide whether the fugitive's conduct would have been

7    criminal under our law.  The Supreme Court noted in Collins v. Loisel, 259 U.S. 309

8    (1922), that:

9    The law does not require that the name by which the crime is described in
       the two countries shall be the same; nor that the scope of liability shall be

10   coextensive, or, in other respects, the same in the two countries.  It is
       enough if the particular act charged is criminal in both jurisdictions.

11

12   259 U.S. at 312 (emphasis added); accord Messina v. United States, 728 F.2d 77 (2d Cir.

13   1984); Cucuzzella v. Keliikoa, 638 F.2d 105, 108 (9th Cir. 1981); United States v.

14   Stockinger, 269 F.2d 681, 687 (2d Cir. 1959); Di Stefano v. Moore, 46 F.2d 308

15   (E.D.N.Y.), aff'd, 46 F. 2d 310 (2d Cir. 1930), cert. denied, 283 U.S. 830 (1931).  The

16   court's analysis of the question of dual criminality is subject to the general requirement

17   that it "approach challenges to extradition with a view toward finding the offense within

18   the treaty."  McElvy v. Civiletti, 523 F. Supp. 42, 48 (S.D.Fla. 1981).

19       In comparing the foreign offense with U.S. law to decide the question of dual

20   criminality, the court may consider federal law, the law of the state in which the hearing

21   is held, and the law of a preponderance of the states.  Cucuzzella v. Keliikoa, 638 F.2d

22   105 (9th Cir. 1981).

23       6.    Competent legal evidence.

24       This is the familiar requirement of probable cause to believe that a crime was

25   committed and that the person before the court committed it.  The standard of proof in

26   extradition proceedings is that of probable cause as defined in federal law.  Sindona v.

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW

-5-

1  Grant, 619 F.2d 167 (2ᵈ Cir. 1980).  This means evidence sufficient to cause a person of

2  ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt

3  of the accused.  Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973).  The Supreme

4  Court stated in Collins, that "[t]he function of the committing magistrate is to determine

5  whether there is competent evidence to justify holding the accused to await trial, and not

6  to determine whether evidence is sufficient to justify a conviction."  259 U.S. 309, 316.

7  The Fourth Circuit explained the court's function in an extradition proceeding in the

8  following terms:

9     The extradition hearing is not designed as a final trial.  The purpose is to
       inquire into the presence of probable cause to believe that there has been a
10     violation of one or more of the criminal laws of the extraditing country, that
       the alleged conduct, if committed in the United States, would have been a
11     violation of our criminal law, and that the extradited individual is the one
       sought by the foreign nation for trial on the charge of violation of its
12     criminal laws.

13  Peroff v. Hylton, 542 F.2d 1247, 1249 (4ᵗʰ Cir. 1976.); see also Fernandez v. Phillips, 268

14  U.S. 311, 312 (1925); United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726,

15  730–31 (9ᵗʰ Cir. 1975) (magistrate's function is to determine whether there is "any"

16  evidence establishing reasonable or probable cause); Jimenez v. Aristeguieta, 311 F.2d

17  547, 562 (5ᵗʰ Cir. 1962); Merino v. United States Marshal, 326 F.2d 5, 11 (9ᵗʰ Cir. 1963),

18  cert. denied, 397 U.S. 872 (1964); In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y.), aff'd,

19  478 F.2d 1397 (2ᵈ Cir. 1973).

20        C.    Role of the Judicial Officer.

21        In determining the extraditability of a fugitive, the court considers the evidence

22  presented on behalf of the requesting state and determines whether the elements defined

23  in the treaty and the case law cited above have been established.  If any explanatory

24  evidence or evidence in support of an affirmative defense specified in the treaty is

25  offered, the court rules on it.  The court makes written findings of fact and conclusions of

26  law as to each of the elements, including separate findings for each offense as to which

27

28  USA's MEMORANDUM RE: EXTRADITION
    JESUS FELIX SALAZAR
    Misc. No. CR 08-90257 RMW

1 | extradition is sought. Shapiro v. Ferrandina, 478 F.2d 894 (2$^d$ Cir. 1973) (separate

2 | findings). If the fugitive is determined to be extraditable, he or she is committed to the

3 | custody of the United States Marshal to await the determination by the Secretary of State

4 | and transfer to the representatives of the requesting state. The court's Certification of

5 | Extraditability is provided to the Secretary of State together with a copy of any evidence

6 | presented on behalf of the fugitive. 18 U.S.C. § 3184.

7 | **II.    DISTINCTIVE FEATURES OF THE LAW OF EXTRADITION.**

8 | A.    *Extradition Hearing Not a Criminal Proceeding.*

9 | An extradition hearing is not a criminal proceeding; its purpose is merely to decide

10 | probable cause, not guilt or innocence. Neely v. Henkel, 180 U.S. 109 (1901); Benson v.

11 | McMahon, 127 U.S. 457, 463 (1888); Simmons v. Braun, 627 F.2d 635 (2$^d$ Cir. 1980);

12 | United States ex rel. Oppenheim v. Hecht, 16 F.2d 955 (2$^d$ Cir. 1927). Thus, the person

13 | whose extradition is sought is not entitled to the rights available in a criminal trial at

14 | common law. Charlton v. Kelly, 229 U.S. 447, 461 (1931); Glucksman v. Henkel, 221

15 | U.S. 508, 512 (1911); United States v. Stockinger, 269 F.2d 681, 687 (2$^d$ Cir.), cert.

16 | denied, 361 U.S. 913 (1959). For example, the fugitive has no right to discovery or even

17 | to cross-examination if any witnesses testify at the hearing (Messina v. United States, 728

18 | F.2d 77 (2$^d$ Cir. 1984)); his or her right to present evidence is severely limited (Messina,

19 | supra, and see Sections II.D and E, infra); and the Sixth Amendment's guarantee to a

20 | speedy trial, being limited by its terms to criminal prosecutions, does not pertain to

21 | extradition proceedings (Jhirad v. Ferrandina, 536 F.2d 478, 485 n.9 (2$^d$ Cir. 1976)).

22 | B.    *Inapplicability of Federal Rules of Criminal Procedure and Evidence.*

23 | The Federal Rules of Criminal Procedure do not apply to extradition proceedings.

24 | Federal Rule of Criminal Procedure 1(a)(5)(A) states: "Proceedings not governed by

25 | these rules include . . . the extradition and rendition of a fugitive." The Federal Rules of

26 | Evidence are also inapplicable. Federal Rule of Evidence 1101(d)(3) provides that "[t]he

27 |

28 | USA's MEMORANDUM RE: EXTRADITION
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

1    rules (other than with respect to privileges) do not apply . . . [to p]roceedings for

2    extradition or rendition." See also Melia v. United States, 667 F.2d 300 (2d Cir. 1981);

3    Greci v. Birknes, 527 F.2d 956 (1st Cir. 1976); Merino v. United States Marshal, 326 F.2d

4    5, 12 (9th Cir. 1963).

5         C.    *Admissibility of Evidence*

6         "Unique rules of wide latitude govern reception of evidence in Section 3184

7    hearings." Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969) (citation omitted). Among

8    these unique rules are the following:

9         1.    Admissibility of hearsay.

10        Hearsay evidence is admissible at extradition hearings and may support a finding

11   of extraditability. Collins v. Loisel, 259 U.S. 309, 317 (1922); O'Brien v. Rozman, 554

12   F.2d 780, 783 (6th Cir. 1977); In re David, 395 F. Supp. 803, 806 (E.D. Ill. 1975); United

13   States ex rel. Eatessami v. Marasco, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). Extradition

14   treaties do not contemplate the introduction of testimony of live witnesses at extradition

15   proceedings because to do so "would defeat the whole object of the treaty." Bingham v.

16   Bradley, 241 U.S. 511, 517 (1916). Thus, a finding of extraditability may be and

17   typically is based entirely on documentary evidence. Shapiro, 478 F.2d at 902–03;

18   O'Brien, 554 F.2d at 783; In re Edmonson, 352 F. Supp. 22, 24 (D. Minn. 1972).

19        2.    Certification of documents.

20        In Cucuzzella v. Keliikoa, 638 F.2d 105 (9th Cir. 1981), the court held that 18

21   U.S.C. § 3190 governs the admissibility of statements submitted by the requesting state

22   and is satisfied by a certification that accords with the terms of the statute. See also

23   Collins v. Loisel, 259 U.S. 309 (1922). Alternatively, documents may be received in

24   evidence if they are certified in accordance with the terms of the treaty. Emami v. United

25   States District Court, 834 F.2d 1444 (9th Cir. 1987).

26   //

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW
                                    -8-

1    D.    *Limitations on Fugitive's Evidence.*

2        A fugitive's right to controvert the evidence introduced against him is "limited to

3    testimony which explains rather than contradicts the demanding country's proof."

4    Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978).  The district court in Matter of

5    Sindona, 450 F. Supp. 672 (S.D.N.Y. 1978), aff'd, 619 F.2d 167 (2[d] Cir. 1980), discussed

6    the distinction between contradictory and explanatory evidence and cited the established

7    authority for the proposition that an extradition hearing should not be transformed into a

8    full trial on the merits:

9        The distinction between "contradictory evidence" and "explanatory
         evidence" is difficult to articulate.  However, the purpose behind the rule is
10       reasonably clear.  In admitting 'explanatory evidence,' the intention is to
         afford an accused person the opportunity to present reasonably clear-cut
11       proof which would be of limited scope and having some reasonable chance
         of negating a showing of probable cause.  The scope of this evidence is
12       restricted to what is appropriate to an extradition hearing.  The decisions are
         emphatic that the extraditee cannot be allowed to turn the extradition
13       hearing into a full trial on the merits.  The Supreme Court has twice cited
         with approval a district court case which aptly summarizes the relevant
14       considerations.  The Supreme Court decisions are Collins v. Loisel, 259
         U.S. 309, 316, 42 S. Ct. 469, 66 L.Ed. 956 (1922), and Charlton v. Kelly,
15       229 U.S. 447, 461, 33 S. Ct. 945, 57 L.Ed. 1274 (1913).  The district court
         opinion is In re Wadge, 15 F. 864, 866 (S.D.N.Y 1883) in which the court
16       dealt with the argument of an extraditee that he should be given an
         extensive hearing in the extradition proceedings:
17
         If this were recognized as the legal right of the accused in extradition
18       proceedings, it would give him the option of insisting upon a full hearing
         and trial of his case here; and that might compel the demanding government
19       to produce all its evidence here, both direct and rebutting, in order to meet
         the defense thus gathered from every quarter.  The result would be that the
20       foreign government though entitled by the terms of the treaty to the
         extradition of the accused for the purpose of a trial where the crime was
21       committed, would be compelled to go into a full trial on the merits in a
         foreign country, under all the disadvantages of such a situation, and could
22       not obtain extradition until after it had procured a conviction of the accused
         upon a full and substantial trial here.  This would be in plain contravention
23       of the intent and meaning of the extradition treaties.

24   Matter of Sindona, 450 F. Supp at 685.  The extent to which the fugitive may offer

25   explanatory proof is largely within the discretion of the judicial officer.  Hooker v. Klein,

26   573 F.2d at 1369; United States ex rel Petrushansky v. Marasco, 325 F.2d 562, 567 (2[d]

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW
                                      -9-

1    Cir. 1963), cert. denied, 376 U.S. 952 (1964) (and cases cited therein).  However, some

2    matters are clearly contradictory and thus impermissible.  See Section II.E, infra.

3        E.    *Impermissible Defenses.*

4        Defenses against extradition which "savor of technicality" should be rejected by a

5    court as they are peculiarly inappropriate in dealings with a foreign nation.  For example,

6    a variance between the charges pending in the foreign state and the complaint filed on

7    behalf of that state in our federal courts is not a defense to surrender.  Glucksman v.

8    Henkel, 221 U.S. 508, 513–14 (1910); accord Bingham v. Bradley, 241 U.S. 511, 517

9    (1916); United States ex rel. Bloomfield v. Gengler, 507 F.2d 925, 927–1024 (2$^d$ Cir.

10   1974); Shapiro, 478 F.2d at 904; In re Edmonson, 352 F. Supp. 22, 24 (D. Minn. 1972).

11       1.    Conflicting evidence.

12       The fugitive's grounds for opposition to the extradition request are severely

13   circumscribed.  Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir.), cert. denied, 439 U.S.

14   932 (1978); First National City Bank of New York v. Aristeguieta, 387 F.2d 219, 222 (2$^d$

15   Cir. 1960); In Re Shapiro, 352 F. Supp. 641, 645 (S.D.N.Y. 1973).  He may not introduce

16   evidence which:  conflicts with the evidence submitted on behalf of the demanding state

17   (Collins v. Loisel, 259 U.S. 309, 315–17 (1922)); establishes an alibi (Abu Eain v.

18   Adams, 529 F. Supp 685 (N.D. Ill. 1980); sets up an insanity defense (Hooker v. Klein,

19   supra); or impeaches the credibility of the demanding country's witnesses (In re Locatelli,

20   468 F. Supp. 568 (S.D.N.Y. 1979)).  Cf. Mainero v. Gregg, 164 F.3d 1199, 1207 n.7 (9th

21   Cir. 1999) (declining to reach question of whether recantation evidence is admissible in

22   extradition hearing; affirming order of extradition despite presentation of recantations,

23   noting that "the very purpose of extradition treaties is 'to obviate the necessity of

24   confronting the accused with the witnesses against him'").  He is limited to introducing

25   explanatory evidence.  See Section II.D, supra.

26

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW

2.    Trial in demanding country on other charges.

A fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted, or that surrender is being requested for political offenses, must be rejected as baseless, without merit, or beyond the responsibility of the court, for the United States Government does not presume that the demanding government will seek a trial in violation of a treaty. Bingham v. Bradley, 241 U.S. 511, 514 (1916). As the district court noted in Gallina v. Fraser, 177 F. Supp. 857, 867 (D. Conn. 1959): "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."

3.    Motivation of demanding country: rule of non-inquiry.

Should a fugitive suggest that a court look behind the extradition request to the motives of the government of the demanding country, the answer may be found in In re Lincoln, 228 F. 70, 74 (E.D.N.Y. 1915):

> It is not a part of the court proceedings nor of the hearing upon the charge of the crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State . . . .

In In re Gonzalez, the court further noted that 18 U.S.C. § 3184 gives it no authority to inquire into such matters. In re Gonzalez, 217 F. Supp. 717, 722, n.15 (S.D.N.Y. 1963); accord In re Extradition of Singh, 123 F.R.D. 127, 129–37 (D.N.J. 1987) (citing cases on doctrine of non-inquiry). In Ramos v. Diaz, 179 F. Supp. 459, 463 (S.D. Fla. 1959), the court clearly stated that the motive of the demanding government in an extradition proceeding is not controlling; the circumstances surrounding the offense when it occurred are dispositive. See also In Re Locatelli, 468 F. Supp. 568, 575 (S.D.N.Y. 1979).

USA's MEMORANDUM RE: EXTRADITION
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

-11-

1    4.    Lack of U.S. constitutional protections abroad.

2    Questions concerning the judicial procedure in the requesting state and the

3    treatment that might be accorded the fugitive after extradition are not proper matters for

4    consideration by the certifying judicial, according to what the Second Circuit refers to as

5    "substantial authority." Ahmad v. Wigen, 910 F.2d 1063, 1072–73 (2ᵈ Cir. 1990) (citing

6    Sindona v. Grant, 619 F.2d 167, 174 (2ᵈ Cir. 1980); Jhirad v. Ferrandina, 536 F.2d 478 (2ᵈ

7    Cir.), cert. denied, 429 U.S. 833 (1976); Arnbjornsdottir-Mendler v. United States, 721

8    F.2d 679, 683 (9ᵗʰ Cir. 1983); Garcia-Guillern v. United States, 450 F.2d 1189, 1192 (5ᵗʰ

9    Cir. 1971), cert. denied, 405 U.S. 989 (1972); Matter of Extradition of Tang Yee-Chun,

10   674 F. Supp. 1058, 1068–69 (S.D.N.Y. 1987). Considering the same issue in a slightly

11   different context, the Court of Appeals for the District of Columbia Circuit said:

12   What we learn from Neely [v. Henkel, 180 U.S. 109 (1901)] is that a
     surrender of an American citizen by treaty for purposes of a foreign
13   criminal proceeding is unimpaired by an absence in the foreign judicial
     system of safeguard in all respects equivalent to those constitutionally
14   enjoined upon American trials.

15   Holmes v. Laird, 459 F.2d 1211, 1219 (D.C. Cir.), cert. denied, 409 U.S. 869 (1972);

16   accord Pfeifer v. United States Bureau of Prisons, 468 F. Supp. 920 (S.D. Cal. 1979),

17   aff'd, 615 F.2d 873 (9ᵗʰ Cir. 1980). Another court disposed of the issue in the following

18   words:

19   Regardless of what constitutional protections are given to persons held for
     trial in the courts of the United States or of the constituent states thereof,
20   those protections cannot be claimed by an accused whose trial and
     conviction have been held or are to be held under the laws of another
21   nation, acting according to its traditional processes and within the scope of
     its authority and jurisdiction.
22

23   Gallina v. Fraser, 177 F. Supp. 856, 866 (D. Conn. 1959), aff'd, 278 F.2d 77 (2ᵈ Cir.

24   1960).

25   //

26   //

27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW

1    F.    *Extradition Treaties to Be Liberally Interpreted.*

2    Extradition treaties must be liberally construed to effect their purpose, namely, the

3    surrender of fugitives for trial for their alleged offenses. Valentine v. United States ex rel.

4    Neidecker, 299 U.S. 5, 14 (1936); Factor v. Laubenheimer, 290 U.S. 276–93, 301 (1933).

5    In discussing the application of this rule, the District Court for the Southern District of

6    Florida in McElvy v. Civiletti, 523 F. Supp. 42, 47 (S.D. Fla. 1981), wrote that:

7            a narrow and restricted construction is to be avoided as not consonant with
        the principles deemed controlling in the interpretation of international

8            agreements. Considerations which should govern the diplomatic relations
        between nations, and the good faith of treaties, as well, require that their

9            obligations should be liberally construed so as to effect the apparent
        intentions of the parties to secure equality and reciprocity between them.

10            [citations omitted].

11    In order to carry out a treaty obligation the treaty "should be construed more

12    liberally than a criminal statute or the technical requirements of criminal procedure,"

13    Factor v. Laubenheimer, 290 U.S. at 298; In re Chan Kam-Shu, 477 F.2d 333, 338–39

14    (5th Cir. 1973).

15    This country does not expect foreign governments to be versed in our criminal

16    laws and procedures. Grin v. Shine, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be

17    insisted upon beyond the requirements of safety and justice." Fernandez v. Phillips, 268

18    U.S. 311, 312 (1925). This approach is mandated by the liberal rules of construction that

19    are to be used in interpreting extradition agreements.

20    Statements by the United States Department of State as to interpretation of treaties

21    are to be given great weight by our courts. Sayne v. Shipley, 418 F.2d 679, 684 (5th Cir.

22    1969), cert. denied, 398 U.S. 903 (1970); In re Ryan, 360 F. Supp. at 272, n.4; In re

23    Extradition of D'Amico, 177 F. Supp. 648, 653 n.7 (S.D.N.Y. 1959), appeal dismissed,

24    286 F.2d 320 (2d Cir.), cert. denied, 364 U.S. 851 (1960).

25    //

26    //

27

28    USA's MEMORANDUM RE: EXTRADITION
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

1    G.    *Fugitive for Extradition Purposes.*

2    The nature of the fugitive's absence from the country seeking his surrender is

3    immaterial; it is sufficient for purposes of extradition that he be found in the United

4    States.  Vardy v. United States, 529 F.2d 404, 407, reh. denied, 533 F.2d 310 (5th Cir.

5    1976); In Re Chan Kam-Shu, 477 F.2d at 338–39; United States ex rel. Eatessami v.

6    Marasco, 275 F. Supp. at 496.

7                                    **CONCLUSION**

8    Extradition hearings are often characterized as sui generis.  See, e.g., Hooker v.

9    Klein, 573 F.2d at 1369.  Despite the unusual nature of the proceedings, there is no

10   mystery to the law of extradition:  it is regulated by a body of well-settled precedent,

11   much of it originating with the Supreme Court.  See Ahmad v. Wigen, 910 F.2d at 1065.

12   Although other elements must also be present, the paramount issue of every extradition

13   proceeding is whether there exists probable cause to believe that the fugitive has

14   committed the crimes charged in the requesting country.  The latter determination is the

15   kind that courts make in a preliminary hearing under Federal Rule of Criminal Procedure

16   Rule 5.1.  Ward v. Rutherford, supra.  The extradition hearing must not be converted into

17   a trial on the merits, and the rules ordinarily applicable in such trials are not used.  The

18   extraditee's opportunities to oppose the request are limited because his defenses will be

19   aired in the requesting country.  This Court's findings of fact and conclusions of law

20   should deal with each of the elements listed above, and with each offense for which

21   extradition is requested.  This Court should not consider any evidence presented or

22   arguments made which depart from these long-recognized standards.

23   DATED: June 11, 2008                Respectfully submitted,

24                                       JOSEPH P. RUSSONIELLO
                                         United States Attorney
25
                                         /s/
26                                       DANIEL R. KALEBA
                                         Assistant United States Attorney
27

28   USA's MEMORANDUM RE: EXTRADITION
     JESUS FELIX SALAZAR
     Misc. No. CR 08-90257 RMW