| | |
|---|---|
| JOSEPH P. RUSSONIELLO (CABN 44332)<br>United States Attorney | **FILED** |
| BRIAN J. STRETCH (CABN 163973)<br>Chief, Criminal Division | 2008 JUN 11  A 11: 44 |
| DANIEL R. KALEBA (CABN 223789)<br>Assistant United States Attorney | RICHARD W. WIEKING<br>CLERK<br>U.S. DISTRICT COURT<br>NO. DIST. OF CA. S.J. |

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5061
Facsimile: (408) 535-5081
E-Mail: daniel.kaleba@usdoj.gov

Attorneys for the Complainant United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE<br>THE EXTRADITION OF<br>JESUS FELIX SALAZAR | ) Misc. No. CR 08-90257 RMW<br>)<br>) UNITED STATES' MEMORANDUM RE:<br>) AVAILABILITY OF BAIL<br>)<br>)<br>) |

The United States hereby files this memorandum regarding the availability of bail in this matter. As set forth in more detail below, bail is available in extradition matters only in "special circumstances." The United States is not aware that any such special circumstances exist here.

**FACTUAL BACKGROUND**

This case involves the request by the Government of Mexico to the United States for the extradition of Jesus Felix Salazar. The charge for which Mexico seeks extradition is homicide. The case is of importance to the Government of Mexico and bears on the United States' foreign policy interests, specifically, its ability to comply with its obligations under the outstanding extradition treaty with Mexico.

//

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

### A. Charges Pending Against Felix Salazar in Mexico.

According to the information provided by Mexico, Jesus Felix Salazar is charged in the State of Baja California, Mexico, with qualified homicide, covered and punishable under Articles 123, 137, 143, 147, 148, and 150 of the Penal Code of the State of Baja California. On February 2, 1998, Fourth Penal Judge in Mexicali, Baja California issued a warrant for the arrest of JESUS FELIX SALAZAR in criminal case number 38/98.

### B. The Facts of the Case.

As set forth in formal papers presented by Mexico, a man by the name of Luciano Pérez Montoya was murdered in Baja California on or about January 3, 1998. Specifically, on January 3, 1998, Pérez Montoya, his wife Margarita Valadéz, and their friend Alma Patiño Mesa were all in Pérez Montoya's car outside Pérez Montoya's house on their way to go shopping. According to Alma, before they could drive off, Felix Salazar pulled up beside them in a pick-up truck with his cousin Félix Salazar Loreto. Felix Salazar began to yell at Pérez Montoya, shouting that he wanted to speak with him.

When Pérez Montoya refused to get out of the vehicle, Felix Salazar walked up to Pérez Montoya's car door and pulled out a firearm. Pérez Montoya said, "No Chuy, don't do that." According to Alma and Margarita, Felix Salazar nonetheless shot at Pérez Montoya's chest, firing several times. Felix Salazar also shot Margarita, the victim's wife, in the abdomen. Felix Salazar then drove off in his pick-up truck. Luciano Pérez Montoya died before he could reach the hospital and Margarita survived.

According to Alma, Felix Salazar and his wife were friends with Pérez Montoya, although Felix Salazar had heard comments that his wife and Pérez Montoya were having an affair. At a proceeding before the Public Prosecutor in Baja California, Pérez Montoya and Margarita's daughter Judith Perez Valdez, who was 15 years old at the time, stated that she witnessed the events and positively identified a photograph of Felix Salazar as the one who shot and killed her father. At a similar proceeding, Margarita identified the same photograph as that of Felix Salazar, the man who shot and killed her husband.

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

1  Homicide is an extraditable offense under Article 2, Appendix Item 1, of the
2  Extradition Treaty between the United States and Mexico.

## DISCUSSION

**A.  Standards Governing Bail in Extradition Proceedings.**

It is well established that bail is not generally available in extradition cases and that, if bail is granted, it should only be when "special circumstances" exist. As set forth in more detail below, "[u]nlike the situation for domestic crimes, there is no presumption favoring bail [in international extradition]. The reverse is rather the case." Matter of Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986) (quoting Beaulieu v. Hartigan, 554 F.2d 1, 2 (1st Cir. 1977)); see also Matter of Requested Extradition of Kirby, 106 F.3d 855, 858 (9th Cir. 1997) ("As the United States points out, this presumption against bail [in extradition proceedings] is contrary to the presumption that favors bail in domestic prosecutions.") (citation omitted).

1.  No Constitutional or Statutory Right to Bail.

There is no constitutional or statutory right to bail in extradition proceedings. As an initial matter, the Eighth Amendment to the Constitution requires only that bail, if granted, not be excessive.[1] Further, the Bail Reform Act and decisions involving pre-trial release apply only to criminal cases. In re Extradition of Mironescu, 296 F. Supp.2d 632, 634 (M.D.N.C. 2003) ("Because an international extradition proceeding is not a criminal case, the Bail Reform Act . . . does not apply.").

2.  International Considerations Generally Counsel Against Granting Bail.

Although bail in extradition proceedings involves some of the same considerations as in ordinary criminal cases, it differs in one extremely significant respect: the international implications of a failure to deliver a fugitive. In re Extradition of Molnar,

---

[1] A related claim, based on an asserted due process right to bail by aliens in deportation proceedings, has been rejected by a New York court. See Doherty v. Thornburgh, 750 F. Supp. 131, 135–38 (S.D.N.Y. 1990) (analyzing the concept and discussing the cases).

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

-3-

182 F. Supp.2d 684, 686–87 (N.D. Ill. 2002). The reason for distinguishing granting release in extradition cases from federal criminal cases is that extradition cases involve an overriding interest in meeting treaty obligations. "As one court has put it, "[i]f the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." United States v. Taitz, 130 F.R.D. 442, 444 (S.D. Cal. 1990) (citation omitted).

Simply put, the international legal system depends wholly on the respect of its members for the obligations into which they freely enter. The axiom <u>pacta sunt servanda</u> — treaties must be obeyed — is thus the heart of the system. A nation that fails to perform a duty mandated by a treaty can justly be accused of subverting the system and may find itself receiving reciprocal treatment from its treaty partner.

Extradition treaties are written so that delivery of fugitives by the United States pursuant to an extradition request is not optional: if the requesting state meets the conditions specified in the treaty, the United States is obliged to deliver the fugitive. This obligation cannot be fulfilled if the fugitive skips bail after being released from custody. In forums throughout the world, the United States vigorously advocates extradition as a means to combat all forms of serious lawlessness.[2] Thus, the United States' ability to deliver fugitives pursuant to extradition requests is subject to special scrutiny worldwide and is of great importance to our national interest.[3]

---

[2] U.S. domestic law nevertheless recognizes an exception under which the Secretary of State may deny extradition for compelling reasons even when the treaty's conditions have been fulfilled. See Escobedo v. United States, 623 F.2d 1098, 1105 n.20 (5th Cir. 1980).

[3] Indeed, Mexico recently agreed to extradite a number of reputed "drug lords" to the United States. See Hector Tobar, <u>Extraditions make a point</u>, L.A. Times, 1/21/07, at 4, available on Westlaw at 2007 WNLR 1188173.

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

-4-

Given the potentially serious consequences on the foreign relations of the United States and the inherent unreliability of fleeing felons, most courts will not grant bail to fugitives absent special circumstances. See United States v. Williams, 611 F.2d 914, 914–15 (1st Cir. 1979). Some courts characterize this reluctance as a presumption against bail for fugitives. See, e.g., United States v. Messina, 566 F. Supp. 740, 742 (S.D.N.Y. 1983). Whatever the name of the policy, it derives from a single source: the conviction that the interest of the United States in living up to its treaty obligations, coupled with the risk of flight inherent in all extradition cases, outweighs any factors that might be advanced in favor of release in all but the most unusual cases. As set forth in more detail in the next section, even if a fugitive is not considered a flight risk by the United States, the fugitive must establish the existence of "special circumstances" that would warrant his release. Molnar, 182 F. Supp.2d at 686 (citing Salerno v. United States, 878 F.2d 317 (9th Cir. 1989)).

3. "Special Circumstances" are Required for a Fugitive to be Released on Bail.

The general unavailability of release in extradition cases has been authoritatively settled by the United States Supreme Court since 1903. In Wright v. Henkel, 190 U.S. 40, 63 (1903), the Supreme Court held:

> Not only is there no statute providing for admission to bail in cases of foreign extradition, but § 5270 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3591), is inconsistent with its allowance after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."
>
> * * *
>
> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. And the same reasons which induced the language used in the statute would seem generally applicable to release pending examination.

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

1  Id. at 61–62; see also Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989) ("There
2  is a presumption against bail in an extradition case and only 'special circumstances' will
3  justify bail.") (quoting Wright v. Henkel, 190 U.S. 40, 63 (1903)); see also Kirby, 106
4  F.3d at 858 (same). "Special circumstances" are "'only [] the most pressing
5  circumstances, and when the requirements of justice are absolutely peremptory.'" United
6  States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289,
7  289 (S.D.N.Y. 1909) (L. Hand, J.)). Despite the age of the Wright decision, it still
8  provides the standard for admission to bail pending extradition. Even though laws have
9  been updated and procedures re-codified since 1903, see 18 U.S.C. § 3181 et seq., there
10 still is no statute that admits an extraditee to bail, and the requirement of a showing of
11 "special circumstances" is still mandated by Wright and its progeny.

12     The "special circumstances" doctrine creates a presumption contrary to the
13 presumption operating in domestic prosecutions, where, as noted above, pre-trial bail is
14 the favored course. Beaulieu, 554 F.2d at 2 ("Unlike the situation for domestic crimes,
15 there is no presumption favoring bail. The reverse is rather the case."). As noted above,
16 the anti-bail presumption in extradition cases is grounded in the strong foreign policy
17 interests inherent in the extradition relationship between the United States and its treaty
18 partners. If a domestically-charged person is released and flees before trial he thwarts the
19 court's ability to enforce our criminal laws. That potential harm is balanced against his
20 presumption of innocence. In this matter, however, Dorantes-Zurita is wanted by the
21 Government of Mexico for charges there. Consequently, there is significantly greater
22 potential harm if he flees before his extradition hearing can be held. Dorantes-Zurita's
23 flight would defeat Mexico's ability to enforce its laws, subject the United States to
24 embarrassment, and damage our foreign policy interests by rendering us unable to meet
25 our treaty obligation to extradite him to Mexico. See, e.g., Wright v. Henkel, 190 U.S. at

28 USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

62; In re Klein, 46 F.2d 85, 85 (S.D.N.Y. 1930) (noting the "grave risk of frustrating the efforts of the executive branch of the government to fulfill treaty obligations").[4]

Although the case law is somewhat unclear as to what constitutes "special circumstances," it is clear that such "special circumstances" are limited to extraordinarily rare situations, or, in the words of Judge Learned Hand, "the most pressing circumstances and when the requirements of justice are absolutely peremptory." In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909). On the government's appeal, the Ninth Circuit has underscored the principle that fugitives arrested in connection with foreign extradition requests should be denied bail absent "special circumstances." United States v. Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992).

Individuals wanted for extradition often cite the need to consult with counsel, gather evidence, and confer with witnesses in preparation for their hearing as facts supporting a "special circumstances" finding. However, these needs do not support a motion for release as they are "important" but "not extraordinary," since "all incarcerated defendants need to do these things." United States v. Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992); see also Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991) (need to assist in preparation of defense insufficient to justify release). Other factors that do not amount to "special circumstances" include: (1) an unblemished record and the ability to post a

---

[4] The continued vitality of the "special circumstances" test has been confirmed in cases such as Hu Yau-Leung v. Soscia, 649 F.2d 914 (2d Cir.), cert. denied, 454 U.S. 971 (1981). In that case, the Court of Appeals for the Second Circuit held:

> The government also asks us to review and vacate the district court's grant of Hu's release on bail. We agree with the government that the standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial. Wright v. Henkel, supra, 190 U.S. at 62, 23 S. Ct. at 786; Beaulieu v. Hartigan, 554 F.2d 1 (1st Cir. 1977). We recognize that, because of the treaty obligations of the United States, there is a presumption against bail in the former situation, and only "special circumstances" will justify bail. Wright v. Henkel, supra; United States v. Williams, 611 F.2d 914 (1st Cir. 1979); Beaulieu v. Hartigan, supra; In Re Mitchell, 171 F. 289 (S.D.N.Y. 1909).

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW

1 | significant bond; (2) the fugitive being a highly trained doctor available to administer care
2 | to the public; (3) the discomfort of sitting in jail; (4) the need to consult with one's
3 | attorney about pending civil litigation, the present extradition hearing, and severe
4 | financial and emotional hardships; (5) advanced age or infirmity; (6) the need for a
5 | special diet; (7) no credit for time served; (8) financial or family hardship; or (9) the
6 | complicated nature of extradition proceedings. Kirby, 106 F.3d at 863; Russell, 805 F.2d
7 | at 1217; Molnar, 182 F. Supp.2d at 688.

8 | Courts have found special circumstances to exist where fugitives have shown a
9 | high probability of their success in the extradition hearing, a serious deterioration of
10 | health, an unusual delay in the proceedings, reason to believe the charges cannot be
11 | supported under the Treaty, the availability of bail for a crime charged in the requesting
12 | country, and a combination of other factors (including the general "uniqueness" of a
13 | case). Molnar, 182 F. Supp. 688–89; Kirby, 106 F.3d at 864–65. The United States is
14 | unaware of any special circumstances to exist in the present case.

## CONCLUSION

For all of the reasons set forth above, the United States will respectfully request that this Court deny any motion made by Felix Salazar for release.

DATED: June 11, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/
DANIEL R. KALEBA
Assistant United States Attorney

USA's MEMORANDUM RE: BAIL
JESUS FELIX SALAZAR
Misc. No. CR 08-90257 RMW